**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Randy G. Sherman

  v.

               Civil No. 16-cv-125-LM
               Opinion No. 2016 DNH 221

Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration


**O R D E R**


  Pursuant to 42 U.S.C. § 405(g), Randy Sherman moves to

reverse the Acting Commissioner's decision to deny his

application for Social Security disability insurance benefits

under Title II of the Social Security Act, 42 U.S.C. § 423.  The

Acting Commissioner, in turn, moves for an order affirming her

decision.  For the reasons that follow, this matter is remanded

to the Acting Commissioner for further proceedings consistent

with this order.

**I. Standard of Review**

  The applicable standard of review in this case provides, in

pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of

> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of
social security disability benefits unless 'the [Acting
Commissioner] has committed a legal or factual error in
evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS,
76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v.
Hudson, 490 U.S. 877, 885 (1989)).

   As for the statutory requirement that the Acting
Commissioner's findings of fact be supported by substantial
evidence, "[t]he substantial evidence test applies not only to
findings of basic evidentiary facts, but also to inferences and
conclusions drawn from such facts." Alexandrou v. Sullivan, 764
F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,
360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial
evidence is 'more than [a] mere scintilla.  It means such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d
594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the
[Acting Commissioner] to determine issues of credibility and to
draw inferences from the record evidence.  Indeed, the
resolution of conflicts in the evidence is for the [Acting

Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts.  That statement, document no. 12, is part of the court's record and will be summarized here, rather than repeated in full.

Sherman applied for Social Security disability insurance benefits ("DIB") in April 2013, claiming that he became disabled on April 2, 2012.  He was last insured for DIB on December 31, 2012.

In 2003, Sherman suffered a compound fracture of his left tibia/fibula.  Thereafter, a metal rod and screws were implanted in his lower leg.  Sherman has been diagnosed with various

impairments, including chronic pain, moderate recurrent major depression, posttraumatic stress disorder ("PTSD"), and rule out attention deficit hyperactivity disorder.[1]  He has been treated with various medications and has received therapy for his mental impairments.

In March 2011, Sherman began seeing Dr. Peter Moran as his primary care provider.  At his first appointment with Dr. Moran, Sherman reported that he had "a 'metal rod' in his left leg that was placed in 2003 and . . . continues to hurt him after a compound tib/fib [fracture]."  Administrative Transcript (hereinafter "Tr.") 198.  Dr. Moran also reported that Sherman was under "[i]ncreased stress," for which he was taking Pristiq[2] and Budeprion SR,[3] and that Sherman had been diagnosed with depression and anxiety disorder.  In January 2013, Dr. Moran

---

[1] "'Rule-out' in a medical record means that the disorder is suspected but not confirmed — i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out."  Byes v. Astrue, 687 F.3d 913, 916 n.3 (8th Cir. 2012) (citing United States v. Grape, 549 F.3d 591, 593 n.2 (3d Cir. 2008)).

[2] Pristiq is a "trademark for preparations of desvenlafaxine succinate."  Dorland's Illustrated Medical Dictionary 1515 (32nd ed. 2012).  Desvenlafaxine succinate is "used as an antidepressant."  Id. at 501.

[3] Budeprion SR is a brand name of the antidepressant budpropion.  See https:www.nlm.nih.gov/medlineplus/druginfo/meds//a695033.html#brand-name-1 (last revised Feb. 15, 2016).

referred Sherman to Jennifer Bloomgren for a psychiatric

evaluation, and she continued treating him thereafter.

In April 2013, on a form provided to her by New Hampshire

Disability Determination Services, Bloomgren offered the

following opinion concerning the degree to which Sherman's

ability to function was affected by his psychological,

psychiatric, or behavioral problems:

> Randy has difficulty with focus and concentration as
> well as significant issues with anxiety and
> irritability.  He has difficulty sleeping at night
> making things worse.  We have started an antipsychotic
> medication for mood stabilizing effects.  Having
> difficult with weaning off Effexor XR.[4]  Anxiety still
> elevated w/difficulty w/sleep + irritability.

Tr. 206.

In July 2014, Dr. Moran drafted a letter, to whom it may

concern, that expressed the following opinions concerning

Sherman's ability to work:

> In my medical opinion, Mr. Sherman is not capable of
> standing or walking for longer than thirty minutes at
> a time due to chronic pain in his right leg.  I
> believe that he is unable to stand or walk for more
> than two hours over an eight hour period.  In
> addition, his chronic pain is contributing to
> depression, anxiety and PTSD.  He is afraid of social
> situations and would have difficulty performing in a
> competitive work environment. . . .

---

[4] Effexor is a "trademark for preparations of venlafaxine
hydrochloride."  Dorland's, supra note 2, at 595.  Venlafaxine
hydrochloride is "used as an antidepressant and antianxiety
agent."  Id. at 2046.

> I do not expect any significant improvement in his
> condition in the future.  I consider him unemployable.
> He remains the same or worse since his 12/07/2012
> visit with me.

Tr. 234.[5]

After the Social Security Administration ("SSA") denied

Sherman's application for benefits, he received a hearing before

an Administrative Law Judge ("ALJ").  Subsequently, the ALJ

issued a decision that includes the following relevant findings

of fact and conclusions of law:

> 3.  Through the date last insured, the claimant had
> the following severe impairments: affective disorder,
> status post leg fracture, alcohol abuse (20 CFR
> 404.1520(c)).
>
> . . . .
>
> 4.  Through the date last insured, the claimant did
> not have an impairment or combination of impairments
> that met or medically equaled the severity of one of
> the listed impairments in 20 CFR Part 404, Subpart P,
> Appendix 1 (20 CFR 404.1520(d), 404.1525 and
> 404.1526).
>
> . . . .
>
> 5.  After careful consideration of the entire record,
> I find that, through the date last insured, the
> claimant had the residual functional capacity to
> perform sedentary work as defined in 20 CFR
> 404.1567(a) except he has the ability to understand,
> remember, and carry out unskilled, simple tasks of 1-3

---

[5] At least one of Dr. Moran's treatment notes also refers to
right leg pain.  See Tr. 235.  However, Dr. Moran's initial
office note and at least one subsequent note refer to left leg
pain.  See Tr. 196, 198.  The court presumes that the
discrepancy is the result of a typographic or transcription
error.

step instructions.  He can adjust to changes in routine.  He can maintain appropriate superficial interactions with coworkers and supervisors.

. . . .

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

. . . .

10.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

Tr. 20, 21, 22, 26.  Without relying upon the testimony of a vocational expert ("VE"), and without providing any explanation or identifying any evidence, the ALJ concluded that Sherman's "additional limitations had little or no effect on the occupational base of unskilled sedentary work."  Tr. 27.

### III. Discussion

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1).  The only question in this case is whether the ALJ correctly determined that Sherman

was not under a disability from April 2, 2012, through December 31, 2012, which is the last day on which he was insured for DIB.

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that he is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  However,

[o]nce the [claimant] has met his or her burden at
Step 4 to show that he or she is unable to do past
work due to the significant limitation, the
Commissioner then has the burden at Step 5 of coming
forward with evidence of specific jobs in the national
economy that the [claimant] can still perform.  Arocho
v. Sec'y of Health & Human Servs., 670 F.2d 374, 375
(1st Cir. 1982).  If the [claimant's] limitations are
exclusively exertional, then the Commissioner can meet
her burden through the use of a chart contained in the
Social Security regulations.  20 C.F.R. § 416.969;
Medical-Vocational Guidelines, 20 C.F.R. pt. 404,
subpt. P, App. 2, tables 1-3 (2001), cited in 20
C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458
(1983). "The Grid," as it is known, consists of a
matrix of the [claimant's] exertional capacity, age,
education, and work experience.  If the facts of the
[claimant's] situation fit within the Grid's
categories, the Grid "directs a conclusion as to
whether the individual is or is not disabled."  20
C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited
in 20 C.F.R. § 416.969.  However, if the claimant has
nonexertional limitations (such as mental, sensory, or
skin impairments, or environmental restrictions such
as an inability to tolerate dust, id. § 200(e)) that
restrict his [or her] ability to perform jobs he [or
she] would otherwise be capable of performing, then
the Grid is only a "framework to guide [the]
decision," 20 C.F.R. § 416.969a(d) (2001).  See also
Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)
(discussing use of Grid when applicant has
nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted).


B. Sherman's Claims

Sherman claims that the ALJ erred in: (1) evaluating the

medical opinion evidence; (2) assessing the credibility of his

statements about pain and other symptoms of his impairments; (3)

determining his residual functional capacity ("RFC");[6] and (4)
determining that there were jobs he could perform, at Step 5,
without taking testimony from a VE.  Claimant's fourth argument
is persuasive, and dispositive.

Magistrate Judge Rich has recently characterized the law of
this circuit regarding when an ALJ may determine that a claimant
is not disabled, at Step 5, without the benefit of testimony
from a VE:

> The Grid generally cannot permissibly be used as a
> vehicle to meet the commissioner's Step 5 burden –
> vocational expert testimony ordinarily must be sought
> instead – if a claimant's nonexertional impairments
> significantly affect his or her ability "to perform
> the full range of jobs" at the appropriate exertional
> level.  Ortiz v. Secretary of Health & Human Servs.,
> 890 F.2d 520, 524 (1st Cir. 1989) (citation and
> internal quotation marks omitted).  "[A]though a
> nonexertional impairment can have a negligible effect,
> ordinarily the ALJ must back such a finding of
> negligible effect with the evidence to substantiate
> it, unless the matter is self-evident." Seavey v.
> Barnhart, 276 F.3d 1, 7 (1st Cir. 2001) (citation and
> internal quotation marks omitted).

Parker v. Colvin, No. 1:15-cv-00446-JHR, 2016 WL 4994997, at *6
(D. Me. Sept. 19, 2016).  Moreover, Judge Barbadoro has noted
that "[t]he First Circuit has cautioned that 'an ALJ typically
should err on the side of taking vocational evidence when a

---

[6] "Residual functional capacity" is a term of art that means
"the most [a claimant] can still do despite [his] limitations."
20 C.F.R. § 404.1545(a)(1).

[non-exertional] limitation is present in order to avoid needless agency rehearings.'" Brindley v. Colvin, No. 14-cv-548-PB, 2016 WL 355477, at *5 (D.N.H. Jan. 29, 2016) (quoting Ortiz, 890 F.2d at 528) (remanding where ALJ neither called vocational expert nor explained why reliance upon the Grid was appropriate, but "merely stated, without explanation or citation to record evidence, that [the claimant's] non-exertional limitations have little or no effect on the occupational base of unskilled light work") (internal quotation marks and citation to the record omitted); see also Pacensa v. Astrue, 848 F. Supp. 2d 80, 90-91 (D. Mass. 2012).

Here, the ALJ included two nonexertional limitations in Sherman's RFC: (1) an ability to "understand, remember, and carry out unskilled, simple tasks of 1-3 step instructions," Tr. 22; and (2) an ability to interact only superficially with coworkers and supervisors.  But, the ALJ did not explain or support her determination that Sherman's nonexertional limitations "had little or no effect on the occupational base of unskilled sedentary work," Tr. 27.  Therefore, based on Seavey, the ALJ was free to resolve Sherman's claim at Step 5 without evidence from a vocational expert only if it is self-evident that the two limitations she identified would have a negligible effect upon a claimant's ability to perform the full range of

unskilled sedentary jobs.  The ALJ's first limitation, to work involving "unskilled, simple tasks of 1-3 step instructions," Tr. 22, does not preclude reliance on the Grid.  See Gurney v. Astrue, Civ. No. 09-153-B-W, 2010 WL 323912, at *2 (D. Me. Jan. 20, 2010).  However, it is not self-evident that a limitation to "superficial interactions with coworkers and supervisors," Tr. 22 (emphasis added), would only have a negligible effect on a person's ability to perform the full range of unskilled jobs.  Consequently, the ALJ committed reversible error by declining to take evidence from a VE to support her Step 5 determination.

The court begins with two observations.  First, a limitation to "superficial interaction" is somewhat nebulous, and the ALJ's decision in this case does little to distinguish between superficial and non-superficial interactions, or to explain how a capacity for superficial interaction is sufficient to perform a large number of jobs.  Second, actual litigation of the issue presented in this case is sparse.  During the course of researching this issue, the court located several dozen cases, perhaps as many as 100, in which ALJs determined that claimants were capable of only superficial interaction with co-workers and/or supervisors.  But in nearly all of them, VE evidence was taken, seemingly without a second thought by the ALJ.  That said, the court has located two decisions that are

directly on point, and that support a determination that, under the circumstances of this case, the ALJ was obligated to take evidence from a VE.

In Stewart v. Colvin, "the ALJ's RFC finding included the limitation that Plaintiff could only 'relate to supervisors and peers on a superficial work basis.'" No. CIV-12-0802-HE, 2013 WL 3852775, at *6 (W.D. Okla. July 24, 2013) (quoting the record). Notwithstanding that limitation, "[t]he ALJ did not obtain expert vocational testimony but instead relied entirely on the grids after making the conclusory statement that 'claimant's mental impairments ha[d] only a slight effect on the occupational base.'"[7]   Id. (quoting the record).  The Stewart court remanded, on grounds that "the ALJ's step five decision based on the grid rules [was] not supported by substantial evidence in the record."  Id.; see also Johnson v. Colvin, No. CIV-13-871-R, 2014 WL 7187050, at *6 (W.D. Okla. Dec. 16, 2014) (remanding where ALJ declared, without analysis or explanation, that various limitations, including limitation to "superficial

---

[7] While Magistrate Judge Purcell criticized the ALJ in Stewart for relying on the Grid after making a conclusory statement about the effect of the claimant's mental impairments on the occupational base, the ALJ in that case went further than the ALJ in this case, by supporting his or her conclusion with references to a medical note and a mental status examination. See 2013 WL 3852775, at *2.

interaction with coworkers and supervisors," had "little or no effect on the occupational base of unskilled work at all exertional levels").

In Lewis v. Astrue, the ALJ found that the claimant was limited to "superficial contacts with co-workers and the public."[8] No. 3:11-cv-05482-RJB-KLS, 2012 WL 1022219, at *10 (W.D. Wash. Mar. 5, 2012), R & R adopted by 2012 WL 1022202 (Mar. 26, 2012).  Despite that limitation, the ALJ in Lewis made a Step 5 determination that the clamant was not disabled, without taking testimony from a VE.  The claimant challenged the ALJ's reliance on the Grid, and the court agreed:

> [T]he restriction to only superficial contact with co-workers is a significant non-exertional limitation that makes reliance on the Grids inappropriate here. It is difficult to see how such a limitation — as opposed to, say, only occasional contact with one's coworkers — would not have a significant impact on plaintiff's ability to perform a full range of sedentary work.  See SSR 85–15, 1985 WL 56857 at *4 [(S.S.A. 1985)] (noting "[a] substantial loss of ability" to respond appropriately to co-workers "would severely limit the potential occupational base").

Id. at *10.

---

[8] If the term "co-workers" is taken to include supervisors, then the limitation in Lewis with respect to internal workplace interaction is identical to the limitation in this case.  But if that term was intended to apply to peers but not supervisors, then the limitation in Lewis is less limiting than the one ascribed to claimant in this case.

Neither <u>Stewart</u> nor <u>Johnson</u> goes into any real detail as to why a limitation to superficial interaction with supervisors and coworkers is sufficiently serious to require VE testimony, but a rationale may be derived from the <u>Lewis</u> court's citation to SSR 85-15, which provides:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; <u>to respond appropriately to supervision, coworkers</u>, and usual work situations; and to deal with changes in a routine work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

1985 WL 56857, at *4 (emphasis added); <u>see also</u> SSR 96-9p, 1996 WL 374185, at *9 (S.S.A. July 2, 1996) ("These mental activities are generally required by competitive, remunerative, unskilled work: . . . [r]esponding appropriately to supervision, co-workers and usual work situations.").

Without saying so directly, the court in <u>Lewis</u> necessarily assumed that a person's ability to respond <u>appropriately</u> to supervision and coworkers is significantly affected by a limitation to <u>superficial</u> interactions.  That assumption, in turn, seems reasonable.  If the only interactions with supervisors and coworkers that are necessary to perform all unskilled jobs are superficial interactions, then a limitation to superficial interactions with supervisors and coworkers would

not significantly affect the occupational base of unskilled

work.  But the ALJ offered neither an explanation nor any

evidentiary support for such a proposition, and it is not self-

evident.  Conversely, a person who is limited to superficial

interactions with supervisors would be able to respond

appropriately to supervision provided through superficial

interactions, but would not be able to respond appropriately to

supervision provided through interactions that must be more than

superficial.  In the absence of any reason to believe that

supervision for <u>all</u> unskilled jobs may be provided exclusively

through superficial interactions, this court is persuaded by

<u>Stewart</u>, <u>Johnson</u>, and <u>Lewis</u> that the ALJ's reliance upon the

Grids was inappropriate.

That said, the court has found one case involving a

limitation similar to the one in this case in which the court

affirmed an ALJ's decision to do without a VE while ruling

against the claimant at Step 5.  In <u>Mitchell v. Astrue</u>, the ALJ

made the following RFC assessment: "Claimant can perform simple

tasks with routine supervision; can relate to supervisors and

peers on a superficial work basis; and cannot relate to the

general public." 498 F. App'x 757, 759 (10th Cir. 2012).

Notwithstanding that limitation, and without taking evidence

from a VE, the ALJ found that the claimant "could perform

substantially all of the work available in the unskilled light
work category because [she] 'retain[ed] the capacity for work
with routine supervision and work-related contact.'" Id. at 760
(quoting the record).  Importantly, the court in Mitchell
explained that "the ALJ supported his use of the grids with a
discussion of [the claimant's] mental impairment, its effect on
job performance under SSR 85-15, and [the claimant's] continuing
ability to perform a substantial majority of light unskilled
work." Id.  Here, however, the ALJ offered no support for her
use of the Grid beyond her conclusory statement that "the
additional limitations had little or no effect on the
occupational base of unskilled sedentary work."  Tr. 27.
Therefore, Mitchell does not persuade the court to affirm the
ALJ's decision to forego a VE in this case.

In addition to Mitchell, which involved a limitation to
superficial interaction, several courts have ruled that VE
testimony was not necessary in cases involving limitations
similar to the ones in this case, but that did not use the term
"superficial."  See, e.g., Lancaster v. Astrue, No. 10-cv-0088-
MJP-JPD, 2010 WL 3211984, at *3 (W.D. Wash. July 19, 2010)
(limitation to "only incidental contact with the public and co-
workers"), R & R adopted by 2010 WL 3211980 (Aug. 10, 2010);
Summers v. Comm'r of Soc. Sec., No. CIV S-08-1309-CMK, 2009 WL

2051633, at *1 (E.D. Cal. July 10, 2009) (limitation to "no frequent public or co-worker contact"); Dollins v. Astrue, Civ. No. 08-141-KSF, 2008 WL 4402208, at *4 (E.D. Ky. Sept. 24, 2008) ("a limitation to simple, unskilled, entry level work that allows for less stress[ful] work without public contact or significant interaction with others"); Atkinson v. Barnhart, No. 3:05-cv-00471-HDM-VPC, 2006 WL 1455473, at *2 (D. Nev. May 19, 2006) (limitation to "simple unskilled work without frequent public or coworker contact").  However, in Boley v. Astrue, Magistrate Judge Grand rejected Lancaster, Summers, Dollins, and Atkinson and found that VE testimony was required when the claimant "was limited to 'unskilled [work] with only minimal contact/interaction with co-workers; minimal contact with, and minimal direction from, a supervisor; and work requiring only brief and superficial contact with the public.'" No. 11-10896, 2012 WL 680393, at *10 (E.D. Mich. Feb. 10, 2012) (quoting the record), R & R adopted by 2012 WL 680392 (Mar. 1, 2012).

According to Judge Grand:

> [I]n . . . those cases . . . the courts supported their decisions only with the regulation's language that unskilled work generally deals with objects rather than people.  None addressed the specific proposition that a limited ability to respond to supervisors and/or co-workers "would severely limit the potential occupational base." SSR 85-15, 1985 WL 56857.  See also 20 CFR § 404.1545 ("[a] limited ability to carry out certain mental activities, such as limitations in . . . responding appropriately to

> supervision, co-workers and work pressures in a work
> setting, may reduce your ability to do past work and
> other work.").

Boley, 2012 WL 680393, at *13 (citations omitted).

As to why the fact that unskilled work deals with objects rather than people is insufficient to support an ALJ's conclusion that a limitation on a claimant's ability to interact with coworkers and supervisors has only a negligible effect on the ability to do unskilled jobs, Judge Grand explained:

> Although unskilled work deals primarily with
> objects and not data or people, SSR 85-15, 1985 [WL]
> 56857, at *[4], it does require the following skills:
> "the abilities, (on a sustained basis) to understand,
> carry out, and remember simple instructions; to
> respond appropriately to supervision, coworkers, and
> usual work situations; and to deal with changes in a
> routine work situation." SSR 85-15, 1985 WL 56857[,
> at *4] (emphasis added).

Boley, 2012 WL 680393, at *11 (parallel citations omitted).  In

Stark v. Astrue, Judge Patel elaborated on that point:

> While the ALJ opines that there still exist[s] a
> significant amount of unskilled work in the national
> market "dealing primarily with objects, rather than
> with data or people," a realistic approach would
> reveal that all jobs require some level of interaction
> with co-workers and supervisors, and that the ALJ's
> speculation of a substantial occupational base is an
> impermissible stretch.

No. C 07-6465 MHP, 2009 WL 2566723, at *8 (N.D. Cal. Aug. 18,

2009) (ruling that where claimant had RFC to perform only jobs

involving limited contact with the public and coworkers, "the

ALJ was under an obligation to hear the testimony of a

vocational expert and there [was] a need to remand on that
basis").  In other words, SSR 85-15 recognizes that there is a
difference between what a person works with, i.e., things or
people, and the context in which he or she works, i.e., under
minimal rather than ubiquitous supervision, or in a solitary
rather than a populous workplace.  Thus, SSR 85-15 plainly
contemplates that a person can be incapable of performing a
"job[] [that] ordinarily involve[s] dealing primarily with
objects," 1985 WL 56857, at *4, if that person is sufficiently
unable "to respond appropriately to supervision, coworkers, and
usual work situations," id.

   In addition to the direct support provided by Stewart,
Johnson, and Lewis for a determination that the ALJ in this case
was obligated to take evidence from a VE, there is also the
following indirect support.

   In Moon v. Colvin, the ALJ did take testimony from a VE,
but "did not incorporate [an] opinion that [the claimant] was
capable of superficial interactions with few co-workers in the
hypothetical question" he posed to the VE. No. C14-5647 BHS,
2015 WL 1188602, at *4 (W.D. Wash. Mar. 16, 2015).  Because the
ALJ did not include that limitation in his hypothetical
question, the court ruled that the VE's response to that
question could not "support [the ALJ's] finding that [the

claimant could] perform jobs in the national economy." Id.
(citing Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993));
see also Baker v. Astrue, No. 5:09 CV 1171, 2010 WL 2710520, at
*6 (N.D. Ohio July 7, 2010) ("More troubling, perhaps, is the
fact that the [VE's] testimony does not include any limitation
for only superficial interaction with co-workers and supervisors
as included in the prior ALJ's RFC finding. . . . [I]t still is
unclear whether a person who can tolerate only superficial
interaction with supervisors and co-workers can perform the
three identified jobs because there is no testimony regarding
that issue.").  If a limitation to superficial interaction with
coworkers and supervisors is significant enough that an ALJ
commits reversible error by failing to bring it to the attention
of a VE, then, by extension, such a limitation cannot be so
negligible that an ALJ can proceed without a VE when he ascribes
it to a claimant.

Moon and Baker both provide indirect support for the
court's conclusion that the ALJ in this case was required to
take evidence from a VE when making her Step 5 determination.

In response to Sherman's claim that the ALJ was obligated
to obtain VE testimony, the Acting Commissioner makes this
counterargument:

> This Court has held that a limitation in the RFC, "to
> avoid overly critical supervision," did not

> substantially erode the occupational base. Beaton v. Astrue, 2011 DNH 046, 2011 WL 1051060, at *7; see also Garcia-Martinez v. Barnhart, 111 F. App'x 22, 23 (1st Cir. 2004) (limitation to "routine" work does not preclude reliance on the Grids).  Based on the above, a limitation to "appropriate," albeit superficial, interaction with coworkers and supervisors would not substantially erode the unskilled occupational base.

Doc. no. 10-1, at 15.  That argument is not persuasive.

In Beaton, the ALJ found that the claimant was limited to employment without "overly critical supervision," and the ALJ ruled against him at Step 5, without taking testimony from a VE. See 2011 WL 1051060, at *7.  After calling it "a close question," Judge DiClerico determined that "the ALJ's determination was . . . minimally sufficient." Id. (citations omitted).  However, the limitation in Beaton referred to the kind of workplace supervision the claimant could tolerate while the limitation in this case refers the claimant's ability to interact with coworkers and supervisors.  Given the differences between the limitation in Beaton and the limitation in this case, Judge DiClerico's decision in Beaton is not as persuasive as the Acting Commissioner contends.

As for Garcia-Martinez, the Acting Commissioner cites that case for the proposition that a "limitation to 'routine work' does not preclude reliance on the Grids."  Doc. no. 10-1, at 15. The issue here, however, is a limitation to "superficial interactions with coworkers and supervisors," Tr. 22, not a

limitation to routine work.  While there is some appeal to the
proposition that routine work can be effectively performed
without anything more than superficial interaction with
coworkers and supervisors, the ALJ did not offer such an
analysis – or any other analysis – when she made her Step 5
determination.  Moreover, while it would not be surprising to
hear a VE offer testimony to that effect, the validity of that
proposition is not quite self-evident.  Rather, drawing such a
conclusion seems more properly to fall within the purview of a
vocational expert.  In short, Garcia-Martinez is distinguishable
as that case did not involve any limitation on the claimant's
ability to interact with coworkers and supervisors.

        In light of the foregoing discussion of Beaton and Garcia-
Martinez, the court concludes that the Acting Commissioner "has
failed to make a persuasive case that . . . the restriction to
only [superficial] interaction[s] with . . . co-workers [and
supervisors]. . . has no more than a negligible effect on
[Sherman's] ability to perform the full range of unskilled
jobs." Gurney, 2010 WL 323912, at *3.

        The court concludes by reiterating two key points.  First,
when an ALJ assesses nonexertional limitations, reliance on a VE
is the default rule.  See Parker, 2016 WL 4994997, at *6.  And
second, "an ALJ typically should err on the side of taking

                                    23

vocational evidence when a [non-exertional] limitation is present." Brindley, 2016 WL 355477, at *5.  Finally, it is important to bear in mind the consequences of the remand order in this case.  The court is not remanding for an award of benefits, or with instructions for the SSA to determine that claimant is disabled by his inability to engage in anything more than superficial interaction with coworkers and supervisors. Rather, all that will happen as a result of this order is that on remand, claimant will receive the benefit of a Step 5 determination that is supported by substantial evidence, rather than an unexplained and conclusory assertion.  See Galinski v. Astrue, No. C11-516-RSL-JPD, 2011 WL 7070323, at *16 (W.D. Wash. Dec. 16, 2011), R & R adopted by 2012 WL 113485 (Jan. 12, 2012) (remanding where claimant needed to "avoid working with the general public, but [could] work with a supervisor and a few coworkers . . . [and] would do best with a predictable work routine," but ALJ did not take evidence from a VE, resulting in a Step 5 determination that "speculate[d] about the base of unskilled work without supporting . . . evidence from the record").

## IV. Conclusion

     For the reasons given, the Acting Commissioner's motion for an order affirming her decision, document no. 10, is denied, and

Sherman's motion to reverse that decision, document no. 8, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge


December 8, 2016

cc:   Ruth Dorothea Heintz, Esq.
      T. David Plourde, Esq.